UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CERTAINTEED CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 3:12-cv-4572 |
| | § | |
| JEFFREY B. MANNING | § | |
| | § | |
| Defendant. | § | |

# **COMPLAINT**

Plaintiff CertainTeed Corporation ("CertainTeed"), files this Complaint against Mr. Jeffrey B. Manning, and alleges:

## I. PARTIES, JURISDICTION AND VENUE

1. This is an action asserting claims for declaratory judgment relating to contractual obligations and the inevitable disclosure of trade secrets.

2. Plaintiff CertainTeed is a corporation organized under the laws of the State of Delaware with its principal place of business located at 750 East Swedesford Road, Valley Forge, Pennsylvania.

3. Defendant, Jeffrey Manning, seeks to accept employment in the Northern District of Texas and this complaint relates to such employment.

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) by virtue of the diversity of citizenship of the parties and the fact that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.    Venue lies in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims in this Complaint are occurring in this district.

## II.   FACTS - BACKGROUND

6.    CertainTeed is a leading North American manufacturer of building materials including roofing, siding, insulation, fence, decking, railing, foundations and pipe.

7.    CertainTeed has approximately 7,000 employees and approximately 30 manufacturing facilities throughout the United States, including facilities in Ennis, Texas and Shreveport, Louisiana. CertainTeed also exports roofing products from its facilities in the United States to countries around the world, including Korea, China, New Zealand, Philippines, and various countries in Eastern and Western Europe.

8.    One of the main reasons CertainTeed is able to maintain its leadership position in the building products industry is its commitment to technological innovation and advancement.

9.    Confidential information regarding such technological innovation and advancement, such as CertainTeed's research and development projects and plans, manufacturing formulations and processes, and product performance specifications, are principal assets of CertainTeed's business.

10.   Such confidential information is of significant economic value to CertainTeed, and would be of significant economic value to CertainTeed's competitors.

11.   CertainTeed goes to great lengths to protect this confidential information, for example, CertainTeed requires key individuals who have access to confidential information to sign a Noncompete Employee Agreement ("Agreement") that restricts them from divulging CertainTeed's confidential information and restricts certain future employment with competitors.

12. Mr. Manning executed such an Agreement on October 2, 2007 and a copy of the Agreement is attached hereto as Exhibit A.

### III.  MANNING'S EMPLOYMENT WITH CERTAINTEED

13. In September 2007, CertainTeed offered Mr. Manning a position as a Senior Project Engineer at CertainTeed's Shreveport, Louisiana facility.

14. Mr. Manning was informed that he would be required to execute a Noncompete Employee Agreement with CertainTeed as a condition of his hire. He was provided a copy of the Agreement which he executed on or about October 2, 2007.

15. Pursuant to the Agreement, Mr. Manning agreed with CertainTeed that:

   a. "Confidential Information" is defined as "all technical and business information of the Company, whether patentable or not, which is of a confidential, trade secret and/or proprietary nature and which is either developed by [him] or to which [he has] had access during [his] employment";

   b. He will "use [his] best efforts and diligence both during and after [his] Company employment to protect the confidential, trade secret, and/or proprietary nature of all Confidential Information. [he] shall not directly or indirectly use (for [himself] or another) or disclose any Confidential Information for so long as it shall remain proprietary or protectable as confidential or trade secret information" and

   c. He would not, "without written consent signed by an officer of the Company, directly or indirectly (whether as owner, partner, consultant, employee or otherwise), at any time during the one-year period following termination of my employment with the Company, engage in or contribute [his] knowledge

>to any work or activity that involves a product, process, apparatus, service or development (i) which is then competitive with or similar to a product, process, apparatus, service or development on which I worked or (ii) with respect to which [he] had access to Confidential Information while at the Company at any time during the period prior to such termination.

See Exhibit A, Noncompete Employee Agreement.

16. Subsequently, on or about May 2009, Mr. Manning was promoted to become the Plant Engineer for CertainTeed's Shreveport, Louisiana plant.

17. As a Senior Project Engineer and Plant Engineer for CertainTeed, Mr. Manning worked on CertainTeed's roofing products and worked with, and had access to, CertainTeed's Confidential Information, as defined by the Noncompete Employee Agreement, and Trade Secrets, as defined by applicable law, such as, but not limited to, information related to: a) CertainTeed's manufacturing procedures; b) CertainTeed's manufacturing strengths and weaknesses; c) CertainTeed's impact resistant shingle design, d) CertainTeed's wide track manufacturing technology and design; e) CertainTeed's manufacturing costs; f) CertainTeed's scrap reduction programs; g) CertainTeed's sales projections and plans; h) CertainTeed's financial information; i) CertainTeed's quality control programs; j) supplier information and k) CertainTeed's product performance.

18. As a Plant Engineer for CertainTeed, Mr. Manning interacted with other more experienced Plant Engineers, at other CertainTeed locations within the United States including visits between facilities which were primarily for the purpose of sharing technology and best practices.

19. In his position with CertainTeed, Mr. Manning had access to detailed information regarding how CertainTeed how CertainTeed cuts and assembles its roofing products.

20. In his position with CertainTeed, Mr. Manning was responsible for modifying manufacturing processes which resulted in improved shingle sealant quality.

21. Mr. Manning was responsible for modifications to manufacturing processes which reduced waste of raw materials and increased profitability.

22. In his position with CertainTeed, Mr. Manning had knowledge of the following systems and manufacturing processes:

      a) hot oil system
      b) sheet cooling
      c) All plant electrical power systems
      d) slate systems
      e) granule blending system
      f) coating application

23. In his position with CertainTeed, Mr. Manning was responsible for assessing the return on investment and quality implications for modifications to manufacturing processes.

### IV.  MANNING'S POTENTIAL EMPLOYMENT WITH ATLAS ROOFING CORPORATION

24. On or about September 19, 2012, Mr. Manning gave notice of his intent to resign from CertainTeed.

25. Mr. Manning informed CertainTeed that he accepted a position with Atlas Roofing Corporation ("Atlas"), in its Dallas, Texas facility, commencing on Monday, October 1, 2012.

26. Atlas is a direct competitor of CertainTeed and develops, manufactures, and exports roofing shingles used in the commercial and residential roofing industry in the United States and Canada as well as in some international locations.

27. The Atlas's roofing products manufactured in its Dallas, Texas plant involve products, processes, apparatus, services and developments which compete with or are similar to CertainTeed products, processes, apparatus, services and developments on which Mr. Manning worked or about which he had access to confidential information while employed by CertainTeed.

28. Specifically, Atlas's roofing products use manufacturing processes and developments similar to the CertainTeed's manufacturing processes and developments on which Mr. Manning worked while employed by CertainTeed.

29. Mr. Manning had access to confidential information concerning CertainTeed products which are similar to and competitive with the Atlas's roofing products for which he would be responsible.

30. If Mr. Manning commences employment with Atlas, Mr. Manning's knowledge of CertainTeed's Confidential Information and/or Trade Secrets will inevitably be used in his position with Atlas.

31. Mr. Manning's potential employment with Atlas in violation of his Agreement would cause CertainTeed monetary and irreparable damage in excess of $75,000, exclusive of interest and costs.

32. Upon information and belief, Atlas temporarily withdrew its offer of employment to Mr. Manning until he could resolve any issues regarding the Agreement with CertainTeed.

33. Upon information and belief, Atlas is ready and willing to employ Mr. Manning if his Agreement is declared unenforceable.

## V.  MANNING'S CLAIMS THAT THE AGREEMENT IS INVALID AND CLAIM FOR DAMAGES

34. On or about October 30, 2012, counsel for Mr. Manning contacted CertainTeed to notify CertainTeed that she believes that the Agreement is invalid and unenforceable.

35. Counsel asserted that Mr. Manning had no obligations under the Agreement and was free to work for Atlas in Dallas if he chose.

36. Counsel further asserted Mr. Manning is entitled to damages because of CertainTeed's expectations that Mr. Manning will comply with his contractual obligations under the Agreement.

37. CertainTeed asserts that, because Mr. Manning intends to work for Atlas in Dallas, Texas, the Northern District of Texas is the proper venue to resolve this dispute, as the competitive activity and breach of contract will occur here.

## VI.  FIRST COUNT – DECLARATORY JUDGMENT

38. CertainTeed incorporates and realleges Paragraphs 1-37 of this Complaint as if fully set forth herein.

39. Mr. Manning and CertainTeed entered into an Agreement which contains, *inter alia*, non-competition and non-disclosure agreements.

40. Manning intended to commence employment with Atlas on or after October 1, 2012 and now claims to be entitled to commence employment with Atlas at its manufacturing facility in Dallas.

41. Upon information and belief, Atlas is ready and willing to employ Manning, upon a ruling that the Agreement is unenforceable.

42. In his position at Atlas, Mr. Manning will engage in or contribute his knowledge to work that involves a product, process, apparatus, service or development which is competitive with or similar to a product, process, apparatus, service or development on which he worked and/or with respect to which he had access to Confidential Information while at CertainTeed.

43. In the event that the Agreement is deemed unenforceable, and Manning is allowed to commence employment with Atlas, CertainTeed will incur damage and loss for which no adequate remedy at law exists.

44. As a direct and proximate result of Mr. Manning's actions and threatened actions, CertainTeed will suffer substantial, immediate and irreparable harm and damages unless the Agreement is declared valid and enforceable.

45. CertainTeed therefore seeks declaratory relief and temporary, preliminary, and permanent injunctive relief from this Court that the Agreement is valid and enforceable and prevents Manning from accepting employment with Atlas, or any other competitor of CertainTeed in Texas, in any position that violates the Agreement.

VII. SECOND COUNT – INEVITABLE MISAPPROPRIATION OF TRADE SECRETS

46. CertainTeed incorporates and realleges Paragraphs 1-45 of this Complaint as if fully set forth herein.

47. CertainTeed owns valuable trade secrets and takes great measures to prevent its competitors from obtaining its trade secrets, including requiring employees to sign non-disclosure agreements and restricting access to computer systems, information regarding its manufacturing processes and plans, and plant facilities.

48. CertainTeed has spent considerable sums of money acquiring, maintaining and safeguarding this information.

49. Upon information and belief, if Mr. Manning commences employment with Atlas, he will inevitably use or disclose such trade secret, confidential, and proprietary information to Atlas.

50. Mr. Manning's misappropriation of CertainTeed's trade secrets has caused, and will cause, CertainTeed to suffer damages.

51. CertainTeed has no adequate remedy at law for Mr. Manning's conduct, because CertainTeed's trade secrets are unique and valuable property that has no readily determinable market value and Mr. Manning's wrongful conduct and the damage resulting therefrom is continuing.

## **PRAYER FOR RELIEF**

WHEREFORE, CertainTeed prays for judgment against Mr. Manning as follows:

1. For a judicial declaration that:
    a. The Noncompete Employee Agreement between CertainTeed and Manning is enforceable and prevents Manning from accepting employment with Atlas in Texas, or any other competitor of CertainTeed, in any position that violates his Noncompete Employee Agreement;
    b. That Manning's employment with Atlas will inevitably require him to use or disclose CertainTeed's trade secrets.
2. Temporary, preliminary and permanent injunctive relief against Mr. Manning, including, but not limited to:
    a. A prohibition against commencing employment with Atlas in Texas, or any other competitor of CertainTeed, in any position that violates his Noncompete Employee Agreement;
3. Costs; and
4. Such other and further relief as this Court may deem proper.

DATED:  November 13, 2012	/s/ William L. Davis
William L. Davis, Esq.
Texas Bar No. 05563800
davisw@jacksonlewis.com
JACKSON LEWIS LLP
500 N. Akard, Suite 2500
Dallas, Texas 75201
Telephone:  (214) 520-2400
Fax:  (214) 520-2008

Conrad S. Kee, Esq.*
JACKSON LEWIS LLP
1010 Washington Blvd, 7th Floor,
Stamford, CT  06901
Tel: (203) 961-0404
Fax: (203) 324-4704
E-mail: keec@jacksonlewis.com
*  *Motion for admission pending*

ATTORNEYS FOR PLAINTIFF
CERTAINTEED CORPORATION